UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN JUDE,

                            Plaintiff,

            -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                            Defendants.

**OPINION & ORDER**

24-CV-08916 (PMH)

Philip M. Halpern, United States District Judge:

        Steven Jude ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under

42 U.S.C. § 1983 against Lisa Marie Bondarenka, Lisa Wilson, George R. Jones, Justin Murphy,

Thomas Coles, Earl Jones, Dane L. Rodriguez, and Tresan K. Goodwin[1] ("Defendants") alleging

violations of his constitutional rights while he was incarcerated at Sullivan Correctional Facility.

(Doc. 1, "Compl.").[2] Defendants Wilson, George Jones, Coles, Goodwin, and Rodriguez move to

dismiss Plaintiff's failure-to-intervene theory of liability pursuant to Federal Rule of Civil

Procedure 12(b)(6).

---

[1] The Court notes that Defendant Tresean Goodwin's name is misspelled in the caption of the Complaint.

[2] The Complaint originally pressed six claims against thirty-one defendants. (*See id.*). The Court, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), *sua sponte* dismissed the New York State Department of Corrections as a defendant under the Eleventh Amendment. (Doc. 10 at 6). Plaintiff subsequently voluntarily dismissed twenty-two defendants from this action, leaving only a due process claim against Defendant Lisa Marie Bondarenka, and an excessive force and failure-to-intervene claim against Defendants Justin Murphy, Lisa Wilson, Earl Jones, George Jones, Thomas Coles, Tresean Goodwin, and Dane Rodriguez. (*See* Doc. 93).

1

Defendants filed the instant motion on January 5, 2026. (Doc. 78; Doc. 79, "Def. Br.").[3]

Plaintiff, despite the opportunity to do so, did not file opposition.[4]

For the reasons set forth below, Defendants' motion to dismiss is denied.

## BACKGROUND

The Court, for purposes of deciding the pending motion, accepts as true the well-pled factual allegations in the Complaint and draws all reasonable inference in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff alleges in the Complaint that he is a fifty-four-year-old African-American man with multiple disabilities. (Compl. ¶¶ 40, 42-43, 45). Plaintiff is "legally blind" and suffers from "advanced bilateral degenerative glaucoma & myopia," "Diabetes [Mellitus] Type II (Adult Onset)," a "learning disability," "Attention Deficit Disorder," "a drop foot condition," and multiple

---

[3] Defendants originally moved to dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (6). (*See* Doc. 78; Def. Br. at 7). After Plaintiff voluntarily dismissed certain defendants, (*see* Doc. 93), Defendants requested that the Court consider their motion to dismiss only on their "failure to protect and qualified immunity arguments." (Doc. 95). Accordingly, the Court only considers Defendants' arguments concerning Plaintiff's failure-to-intervene claim and the affirmative defense of qualified immunity. (*See* Def. Br. at 21-22, 26-28). Because Defendants no longer move to dismiss for lack of standing, the Court considers their motion to dismiss as only being brought pursuant to Rule 12(b)(6) and not Rule 12(b)(1).

[4] Defendants filed a pre-motion letter on November 3, 2025, indicating their intention to move to dismiss the Complaint. (Doc. 64). On November 18, 2025, the Court granted Defendants leave to file a motion to dismiss the Complaint. (Doc. 69). On December 11, 2025, the Court granted Defendants' application to delay the briefing schedule on their motion to dismiss the Complaint. (Doc. 74). A copy of the briefing schedule was mailed to Plaintiff. (*See* December 15, 2025 Entry). In accordance with the briefing schedule set by the Court, Defendants filed and served a motion to dismiss the Complaint on January 5, 2026. (Docs. 78-79). Plaintiff's opposition to Defendants' motion was due February 4, 2026. (Doc. 74). Plaintiff did not file an opposition to Defendants' motion by February 4, 2026. On February 18, 2026, the Court *sua sponte* extended Plaintiff's time to oppose Defendants' motion to dismiss to March 20, 2026 and provided that no further extension of time would be granted. (Doc. 87). A copy of the Court's order granting this extension was mailed to Plaintiff. (*See* February 19, 2026 Entry). Plaintiff never filed an opposition to Defendants' motion to dismiss. Thus, Plaintiff was sent Defendants' motion papers, as well as several additional documents notifying him that Defendants had moved to dismiss the Complaint. Accordingly, the Court deems the motion fully submitted and ripe for adjudication.

psychiatric disorders, including schizophrenia, "bipolar disorder, anxiety disorder, personality disorder, & [an] unspecified mood disorder." (*Id.*). As a result of these conditions, Plaintiff experiences "progressive vision loss, restricting his vision in both eyes," "difficulty walking, decreased function, discomfort, increased fall risk, neurological pain," "fatigue," and "extreme chronic pain"; he sometimes wears "a custom-molded fiber-glass Prosthetic Ankle-to-Foot, AFO, leg-brace on his left leg," uses "a support cane to ambulate," "is assigned a[n] inmate escort to navigate through the facility," and, "at one point or another," took "various anti-psychotic mediations" to manage his symptoms. (*Id.* ¶¶ 42-43, 45).

On January 24, 2024, while incarcerated at Sullivan County Correctional Facility, Defendant Murphy, a correctional officer at Sullivan County Correctional Facility, allegedly "utilized excessive, unreasonable and unjustified force" against Plaintiff. (*Id.* ¶ 28). Defendants Wilson, George Jones, Coles, Goodwin, and Rodriguez, all correctional officers, were present when Defendant Murphy used force against Plaintiff, but "failed to intervene when defendant Murphy decided to use force on" Plaintiff. (*Id.* ¶¶ 27, 29, 31-32, 66-67, 73). Plaintiff also alleges that a Defendant named Earl Jacobs, another correctional officer who is not listed in the caption of the Complaint, was present when Defendant Murphy used force against Plaintiff. (*See id.* ¶ 30).

The events leading up to, and including, Defendant Murphy's alleged use of force against Plaintiff on January 24, 2024, are as follows. Around 4:15 a.m. on January 24, 2024, Plaintiff informed a correctional officer, Kimberly Bermundez, that he had tied a noose around the gate of his cell and intended to commit suicide. (*Id.* ¶ 57). This correctional officer told Plaintiff "to get back in bed" and continued walking past Plaintiff's cell. (*Id.*). Plaintiff "immediately grabbed some large paper-clips, hooked them together and beg[a]n swallowing them, grabbed his state razor out of the locker, broke that and commenced to cutting up his body parts, chest and throat . . . ." (*Id.* ¶

58). Several correctional officers saw Plaintiff harming himself on the facility's cameras, responded to Plaintiff's cell, and requested that Plaintiff go to the facility's medical center for treatment. (*Id.* ¶¶ 59-60). Plaintiff agreed to accompany them, turned over the razor blade, and was handcuffed and taken to the medical center. (*Id.* ¶¶ 60, 62).

Plaintiff, at the medical center, was x-rayed and then allegedly slammed and pinned to the ground by Defendant Murphy for refusing to sit in a chair. (*Id.* ¶¶ 64-72). Defendant Murphy, while Plaintiff was being x-rayed, bragged to the other correctional officers in the room that, in 2022, he had "man handled" Plaintiff, and "insisted to the other officers that he wanted to take hold of plaintiff . . . ." (*Id.* ¶ 65). Defendant Murphy then "took hold of plaintiff['s] cuffs," "escorted him back into the treatment room from which he came," and "ordered him to sit in a hard back chair . . . ." (*Id.* ¶ 66). Plaintiff was "unable to sit" and, accordingly, "refused to sit" and stated that he would "rather stand, as he was in pain . . . ." (*Id.* ¶¶ 28, 66). Defendant Justin Murphy again insisted that Plaintiff sit down; Plaintiff refused and "called out to defendant Wilson, to ask that another officer take hold of his body . . . ." (*Id.* ¶ 66). Defendant Wilson "ignored plaintiff's cries for help . . . ." (*Id.* ¶ 67). Plaintiff did not "attempt[] to escape, injur[e] someone, or otherwise resist defendant Murphy, and just stated, 'he was not sitting down,' . . . ." (*Id.* ¶ 72). Defendant Murphy proceeded to slam Plaintiff to the floor and put his weight and "continuous pressure" on Plaintiff's neck and spine. (*Id.* ¶¶ 73, 80). Plaintiff pleaded with Defendant Murphy "to get off of him, or else he was going to 'spit in his face'" in an effort to get Defendant Murphy to stop. (*Id.* ¶ 80). "[W]hen that didn't work, plaintiff tried stating he had aids," even though he does not in fact have AIDS, hoping that this statement would cause Defendant Murphy to stop his use of force. (*Id.* ¶¶ 80, 83).

Five other correctional officers were in the room and Defendant Wilson was "idly standing right outside the door" while Defendant Murphy slammed Plaintiff to the floor and applied

pressure to his back and neck. (*Id.* ¶ 67). Plaintiff identifies four of these five correctional officers as Defendants George Jones, Coles, Goodwin, and Rodriguez. (*Id.* ¶¶ 27, 29, 31-32). Plaintiff alleges that these four Defendants and Defendant Wilson "failed to take any action" when Defendant Murphy allegedly "used excessive & unnecessary force on the plaintiff while he was handcuffed . . . ." (*Id.* ¶¶ 27, 29-32, 67, 73). Defendant Wilson later told Plaintiff that she did not intervene because "she didn't want to look weak in front of her other officers" or for "them to think that a[n] inmate was dictating who took hold of him." (*Id.* ¶ 78).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 371 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the claims challenged on this motion even without the benefit of formal opposition to the motion.

## ANALYSIS

Plaintiff's claims for relief are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

7

I.      Failure-to-Intervene Claim

Plaintiff asserts a claim for failure to intervene against Defendants Wilson, George Jones, Coles, Goodwin, and Rodriguez. (Compl. ¶¶ 197-200). Plaintiff's claim is predicated on these Defendants' alleged failure to prevent the excessive force used against Plaintiff by Defendant Justin Murphy. (*Id.* ¶¶ 198-99). Defendants argue that Plaintiff "fails to allege that Defendants were actually in physical proximity, or that the incident was of such extended duration that they had a reasonable opportunity to intercede." (Def. Br. at 21 (citing *Cornell v. Vill of Clayton*, 691 F. Supp 3d 608, 621 (N.D.N.Y. 2023)).[5] Defendants further argue that Plaintiff does not allege that Defendant Wilson was "even present in the same room at the time of the incident when the alleged use of force occurred, all but admitting that she did not have an opportunity to intervene." (*Id.*).

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Prison officials can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *6 (S.D.N.Y. Aug. 16, 2021) (citation modified) (quoting *Edwards v. Daniels*, No. 17-CV-05018, 2020 WL 3057412, at *2 (S.D.N.Y. June 9, 2020)).

"Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). "An officer may be liable for failure to intervene under Section 1983 where (1) the officer had a

---

[5] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

8

realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 108 (N.D.N.Y. 2023) (citation modified) (quoting *Gerasimou v. Cillis*, No. 15-CV-06982, 2022 WL 118748, at *5 (E.D.N.Y. Jan. 12, 2022)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557. Moreover, a "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012).

Plaintiff has properly alleged that Defendants were close enough to him during the alleged use of excessive force by Defendant Justin Murphy to have "had a realistic opportunity to intervene and prevent the harm," *Werkheiser*, 655 F. Supp. 3d at 108 (quoting *Gerasimou*, 2022 WL 118748 at *5), and that the incident was for a long enough duration to afford Defendants such an opportunity, *see Cornell*, 591 F. Supp. 3d at 621 (finding defendant officers had a reasonable opportunity to intervene in arrest that "took approximately one minute."). Plaintiff alleges that Defendants George Jones, Coles, Goodwin, and Rodriguez were "in the room" when Defendant Murphy used force against him. (Compl. ¶ 67). Plaintiff also alleges that Defendant Murphy slammed him to the floor, applied pressure to his neck and back, and, while this was occurring, Plaintiff threatened to spit on Defendant Murphy, told him he has AIDS, and cried to Defendant Wilson for help. (*Id.* ¶¶ 67, 80). While Plaintiff does not specifically plead how long the incident lasted, "[it] is implausible that these numerous actions occurred in such quick succession as to preclude an opportunity for intervention." *Harris v. City of Newburgh*, No. 16-CV-02731, 2017

9

WL 4334141, at *9 (S.D.N.Y. Sept. 27, 2017). Thus, Plaintiff has plausibly pled that Defendants George Jones, Coles, Goodwin, and Rodriguez "had a realistic opportunity to intervene and prevent the harm from occurring." *Cornell*, 591 F. Supp. 3d at 620 (quoting *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021)).

With respect to Defendant Wilson, that she was allegedly standing in the doorway as opposed to in the same room as Plaintiff and Defendant Justin Murphy does not mean she did not have a realistic opportunity to intervene. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557. Based on the facts alleged in the Complaint, a reasonable jury could conclude that Defendant Lisa Wilson had a reasonable opportunity to intervene in Defendant Justin Murphy's use of force and failed to do so. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 261-62 (S.D.N.Y. 2003) (finding complaint plausibly alleged a failure to intervene claim where a defendant "was hiding around the corner" while the alleged use of force was occurring). According to the Complaint, Defendant Wilson even confirmed she could have intervened, but chose not to do so to avoid appearing "weak in front of her other officers . . . ." (Compl. ¶ 78).

Accordingly, Defendants' motion to dismiss Plaintiff's failure-to-intervene theory of liability is denied.

II.    Qualified Immunity

Defendants also half-heartedly argue in one sentence of their brief that, even if Plaintiff states a claim for failure to intervene in Defendant Murphy's use of excessive force, their actions are protected by the doctrine of qualified immunity. (Def. Br. at 26-28).

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436). Thus, "[a]t the motion to dismiss stage, the qualified immunity defense 'faces a formidable hurdle . . . and is usually not successful' because it is the *defendant* that must plead and prove the defense." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (second alteration in original) (quoting *Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020)).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The contours of a right are sufficiently clear if there is a case in which "'an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019)). In other words, if an official "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct," then they are not entitled to qualified immunity. *Id.* (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, Defendants do not overcome the "formidable hurdle" and meet their burden of establishing qualified immunity at this stage of the litigation. Defendants argue that "they could not have reasonably believed they were violating clearly establishing law for failing to intervene where there is no indication that they were even in physical proximity to the alleged use of force, much less that they had the logistical ability to intervene to prevent the harm." (Def. Br. at 28). However, from the four corners of the Complaint, Plaintiff has plausibly pled that Defendants Wilson, George Jones, Goodwin, Coles, and Rodriguez, were in physical proximity to the alleged use of force and had sufficient time to intervene, but failed to do so. (*See* Compl. ¶¶ 67, 80). Other cases have found, in similar circumstances to those alleged by Plaintiff, that this conduct violates the Constitution. *See McCoy*, 255 F. Supp. 2d at 261-62; *Harris*, 2017 WL 4334141, at *9; *see also McDay v. Eckert*, No. 20-CV-00233, 2026 WL 376730, at *10 (W.D.N.Y. Feb. 11, 2026) ("It has long been established that an officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used." (citation modified)); *Powell v. City of Jamestown*, No. 21-CV-

00721, 2022 WL 1913581, at *15 (W.D.N.Y. June 3, 2022) (denying motion to dismiss failure-to-intervene claim where "defendants did not take any steps to protect the plaintiff from the assault, in fact such individuals stood idly by and watched as plaintiff was repeatedly struck."); *Bowen v. Patrick*, No. 11-CV-04799, 2014 WL 3819200, at *5 n.3 (S.D.N.Y. Aug. 4, 2014) ("Assuming Plaintiff's account is true—that Patrick gratuitously assaulted Plaintiff while Rogers and Williams stood idly by—Defendants would plainly not be entitled to qualified immunity."); *Gillard v. Rosati*, No. 08-CV-01104, 2011 WL 4402131, at *13 (N.D.N.Y. Aug. 22, 2011) ("A corrections worker who, though not participating, is present while an assault upon an inmate occurs may nonetheless bear responsibility for any resulting constitutional deprivation."), *adopted by* 2011 WL 4344061 (N.D.N.Y. Sept. 14, 2011). "Defendants do not argue or show" that their duty to intervene under the circumstances alleged "is not clearly established." *Shea v. Town of Brookhaven*, No. 21-CV-05696, 2026 WL 948364, at *29 (E.D.N.Y. Apr. 8, 2026).

Accordingly, Defendants have failed to meet their burden of establishing qualified immunity such that Plaintiff's claim for failure to intervene should be dismissed.

III.     Defendant Earl Jones

Plaintiff names, in the caption of the Complaint, correctional officer Earl Jones as a Defendant. (*See* Compl. at 1). Plaintiff also appears to press his excessive force and failure-to-intervene claim against Defendant Earl Jones. (*See id.* at 45). However, in the body of the Complaint, Plaintiff refers to a Defendant named "Earl Jacobs," who is not listed in the caption of the Complaint, but was allegedly "present on 1/24/24, wearing a body camera when defendant Justin Murphy used excessive or unnecessary force on plaintiff . . . ." (*Id.* ¶ 30).[6]

---

[6] Defendants, in their moving brief, acknowledge that Earl Jacobs is "referred to as 'Earl Jones' in the caption." (Def. Br. at 8-9).

13

The Court, in an Order of Service, previously directed the Attorney General to provide the badge number and service address for Officer Earl Jones. (Doc. 10 at 4). The Office of the Attorney General responded to the Order of Service, stating that "based on a review of DOCCS employment records, nobody with the name 'Earl Jones' has been employed by DOCCS since 1994." (Doc. 32). However, in the Complaint, Plaintiff supplies sufficient information to permit the Office of the Attorney General to identify Correctional Officer Earl Jacobs, who was allegedly present at Sullivan County Correctional Facility during the alleged use of excessive force against Plaintiff on January 24, 2024. (*See* Compl. ¶ 30).

Accordingly, Plaintiff is directed to file a letter advising the Court whether Earl Jacobs, and not Earl Jones, is the individual he intends to sue within fourteen (14) days of the date of this Opinion and Order. If Plaintiff so advises, the Court will order the Office of the Attorney General to ascertain the address where Earl Jacobs may be served, deem the Complaint amended to replace Earl Jones with Earl Jacobs as a defendant and, if necessary, issue an order directing the Clerk of Court to complete the USM-285 form with the address for Earl Jacobs and deliver all documents necessary to effect service to the U.S. Marshals Service.

## **CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss (Doc. 78) is DENIED. The served Defendants are directed to file an answer to the Complaint within fourteen (14) days of the date of this Opinion and Order.

Plaintiff is directed to file a letter within fourteen (14) days of the date of this Opinion and Order advising the Court whether Earl Jacobs, not Earl Jones, is the defendant he intends to sue.

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:    White Plains, New York
          May 7, 2026

_____
PHILIP M. HALPERN
United States District Judge

15